UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
LUZ QUINTERO and
ARMANDO QUINTERO,                                    Civil Action No. 17-cv-3932

        Plaintiffs,

  -against-                                                   **AMENDED COMPLAINT**


WELLS FARGO BANK, N.A.,
LAW OFFICES OF WALTER A. ANON, P.A.,
LAW OFFICES OF AARON I. KATSMAN, P.C.,
ALEXANDER SHIRYAK, P.C..,
JPMORGAN CHASE BANK, N.A.,
HOMEBRIDGE FINANCIAL SERVICES, INC.,
YAKOV NIYAZOV,
BYDEX B LLC,
STEVEN BURROUGHS, and
JOHN DOE NO. 1, and 2,

        Defendants.                                 Jury trial demanded.
-------------------------------------------------------X

## Introduction

1. Plaintiffs Luz Quintero and Armando Quintero ("the Quinteros") bring this Amended Complaint against Wells Fargo Bank, N.A. ("Wells Fargo"), JP Morgan Chase Bank, N.A. ("Chase"), Law Offices of Walter A. Anon, P.A. ("Anon"), Law Offices of Aaron I. Katsman, P.C. ("Katsman"), Alexander Shiryak, P.C., ("Shiryak"), HomeBridge Financial Services, Inc. ("HomeBridge"), Yakov Niyazov ("Niyazov"), Bydex B LLC ("Bydex"), Steven Burroughs ("Burroughs"), and John Doe No. 1 and 2 ("Defendants"), seeking recovery for their respective roles in the fraudulent interception of a wire transfer.

## Jurisdiction

2. This Court has subject matter jurisdiction of this dispute pursuant to 28 U.S.C. Sec. 1331, as the actions concern federal questions under 18 U.S.C. §1030 and 18 U.S.C. §1343.

3. This Court has personal jurisdiction over Defendants because each engaged in commerce and/or fraudulent activity in New York or with a counter-party in New York.

## Venue

4. Venue is proper in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Queens County, New York.

## Parties

5. Plaintiffs Luz and Armando Quintero are current residents of the State of Florida, and were residents of the State of New York as of October 2016.

6. Defendant Wells Fargo Bank, N.A. is a national bank with its principal place of business located in San Francisco, California.

7. Defendant JPMorgan Chase Bank, N.A. is a national bank with its principal place of business located in New York, New York.

8. Defendant Law Offices of Walter A. Anon, P.A. is a law firm with its principal place of business located at Royal Oaks Office Park, 7975 N.W. 155th Street, Suite A, Miami Lakes, Florida 33016.

9. Defendant Law Offices of Aaron I. Katsman, P.C. is a domestic professional corporation with its principal place of business located at 70 East Sunrise Highway, Suite 608 Valley Stream, New York 11581.

10. Defendant Alexander Shiryak, P.C. is a domestic professional corporation with its principal place of business located at 125-10 Queens Boulevard, Suite 222, Kew Gardens, New York 11415.

11. Defendant Yakov Niyazov, as trustee for the FM Family Trust, is a citizen of the State of New York. Upon information and belief, the FM Family Trust is a trust domiciled in

New York and established under the laws of the State of New York.

12. Defendant HomeBridge Financial Services, Inc. is a New Jersey corporation with its principal place of business located at 194 South Wood Avenue, 9th Floor, Iselin, New Jersey 08830.

13. Defendant John Doe No. 1 and 2's identity, residence, and citizenship are unknown at this time. Upon information and belief, Defendant Bydex B LLC is a limited liability company organized under the laws of the State of Georgia, with its principal place of business at 5474 Pepperwood Court, Stone Mountain, Georgia 30087. Upon information and belief, Defendant Steven Burroughs is a citizen of the State of Georgia.

**Factual Allegations**

14. On or about Oct. 24, 2016, the Quinteros sold their home in New York State, located at 7516 183rd Street, Fresh Meadows, NY 11366 ("the NY Home"), to Yakov Niyazov, as trustee for the FM Family Trust.

15. The Quinteros were represented by The Law Offices of Aaron I. Katsman, P.C., located at 70 East Sunrise Highway Suite 608 Valley Stream, NY 11581, ("Katsman") in the sale of the NY Home while Niyazov was represented by Nathan Erlich PC.

16. Pursuant to the parties agreement, a portion of the proceeds from the sale of the NY Home in the amount of $299,229.20 were to be wired to the escrow account of the Quinteros' Florida attorney, Walter A. Anon ("Anon") by Law Offices of Alexander Shiryak, Esq, located at 125-10 Queens Boulevard, Suite 222, Kew Gardens, NY 11415 to purchase a condominium in Florida ("the FL Condo"), which was to serve as their residence during retirement.

17. Katsman requested wiring instructions from Anon on Monday, October 24, 2016 via email.

18. On Monday October 24, 2016, Katsman received wiring instructions from Anon on Anon's firm letterhead listing Sabadell United Bank as the receiving bank.

19. According to Anon, Anon's email account was hacked at around this time and fraudulent emails were sent from Anon's email account by John Doe 1 and 2, Bydex, and Burroughs ("the Intentional Tortfeasors") to the Quinteros' counsel, Katsman, requesting confirmation of banking details regarding the wire transfer and providing fraudulent wire instructions to a Wells Fargo bank account on Monday October 24, 2016 and October 25, 2016.

20. Relying on the email from Anon's account, Katsman requested Shiryak to wire the amount of $299,229.20 from his Chase escrow account to the above-referenced Wells Fargo account on October 27, 2016 ("the Converted Funds").

21. On October 29, 2016, Luz Quintero contacted Katsman regarding the wire transfer, stating that Anon had informed the Quinteros that the money was not received in Anon's escrow account.

22. On October 31, 2016, Katsman contacted Anon requesting information regarding the wire transfer.

23. On November 1, 2016, Katsman was contacted by Wells Fargo's Fraud Unit regarding a fraud interception that had occurred in Georgia where the Intentional Tortfeasors had attempted to retrieve the funds from the wire transfer.

24. The Intentional Tortfeasors could not explain to Wells Fargo's satisfaction why the release should be authorized when the wire transfer was stated for "Luz and Armando Quintero." The Intentional Tortfeasors stated they were from a renovation company and were doing renovations. Wells Fargo did not release the money to the Intentional Tortfeasors at that time, but instead contacted Katsman to investigate.

25. On November 3, 2016, Katsman contacted Anon to discuss the fraudulent emails

originating from Anon's office, which were also faxed to him by Katsman on the same day. Anon stated that the Wells Fargo account was not his and he had no relationship with the account.

26. On November 3, 2016, Katsman called Wells Fargo's Customer Service and Loss Prevention departments regarding the fraudulent wire transfer and case #116443658 was provided by Loss Prevention.

27. Wells Fargo informed Katsman that it would need an indemnity agreement from Chase in order to release the money that Wells Fargo was holding.

28. Shiryak sent a wire recall request to Wells Fargo from his Chase escrow account, but Wells Fargo refused to release the money unless Chase provided an indemnity agreement.

29. Katsman and Shiryak contacted Chase, who provided Chase Recall #161101-003621.

30. On December 23, 2016, Wells Fargo informed Katsman that they were unable or unwilling to return the wired funds to the Chase account or to the Quinteros unless Chase submitted an indemnity agreement to Wells Fargo.

31. Wells Fargo did not explain why it allegedly needed this indemnity agreement to return the wire payment.

32. On February 14, 2017, Wells Fargo issued a letter to Katsman stating they were unable to return the wired funds without a letter of indemnity from Chase and a hold would be placed on the account for one year. Wells Fargo informed Chase of this, but Chase refused to execute an indemnity agreement or take other measures to coordinate with Wells Fargo's legal and/or fraud detection departments to address their concerns and secure a refund of the wire.

33. Upon information and belief, Wells Fargo disbursed approximately $87,000.00 to the Intentional Tortfeasors on or about October 31, 2016, and made an additional disbursement

of approximately $122,000.00 to the Intentional Tortfeasors after this, despite being on notice of the fraudulent nature of the wire transaction.

34. To this date, Wells Fargo has not released any funds to the Quinteros or refunded any part of the wire payment to Chase.

35. Chase has refused to provide a letter of indemnity to Wells Fargo despite numerous requests. Both Chase and Wells Fargo have failed to reasonably cooperate with the Quinteros or their their counsel to provide relevant information, have failed to respond to numerous emails and phone calls from the Quinteros and their counsel, or to make any reasonable effort to reverse the fraud. Instead, Chase and Wells Fargo each pointed to the other as the reason why the wire transfer could not be reversed, and through bureaucratic inertia, allowed the problem to fester until Wells Fargo mistakenly released most of the Converted Funds to the Intentional Tortfeasors.

36. The purchasers of the NY Home have agreed to assign their claims against Chase and any claims concerning the Converted Funds to the Quinteros. They have received title and possession of the NY Home, and the Converted Funds constitute part of the consideration for that purchase and became the property of the Quinteros upon the closing of the sale of the NY Home. Moreover, the Quinteros were relying upon the Converted Funds to fund the purchase of their condominium in Florida and their retirement. The Converted Funds represented a large portion of the Quinteros' life savings, and the conversion of these funds has jeopardized their ability to enjoy a secure retirement.

## AS AND FOR A FIRST CAUSE OF ACTION
### (WIRE FRAUD)

37. Plaintiffs repeat and reallege the allegations above with the same force and effect as if set forth at length herein.

38. Pursuant to 18 U.S.C. §1343, to be liable for wire fraud, Plaintiffs must demonstrate a (1) scheme to defraud exists; (2) knowledge or intent to participate in the scheme; and (3) use of interstate transmissions of communication, such as wire communication, to perpetuate the furtherance of the scheme.

39. Based on the foregoing, a scheme to defraud the Plaintiffs existed and the Intentional Tortfeasors and/or Anon had full knowledge and intent to participate in the scheme to defraud by sending fraudulent wire instructions to the Quinteros.

40. As a direct result of the scheme, the Quinteros wired the Converted Funds to the Intentional Tortfeasors and/or Anon's Wells Fargo bank account, causing damages to the Quinteros of not less than $299,229.20.

41. The Quinteros do not currently know whether the Intentional Tortfeasors were confederates of Anon or whether Anon's email account was genuinely hacked. Upon information and belief, the Intentional Tortfeasors and Anon had full knowledge and intent to participate in the scheme to defraud by sending fraudulent wire instructions to the Quinteros.

42. As a result, the Intentional Tortfeasors and Anon are liable to the Quinteros for wire fraud in an amount not less than $299,229.20.

## AS AND FOR A SECOND CAUSE OF ACTION
### (COMPUTER FRAUD)

43. Plaintiffs repeat and reallege the allegations above with the same force and effect as if set forth at length herein.

44. Pursuant 18 U.S.C. §1030(2)(C), anyone who "intentionally access[es] a computer without authorization... and thereby obtains... information from any protected computer" is liable for computer fraud.

45. Per 18 U.S.C. §1030(5)(B), anyone who "intentionally accesses a protected

computer without authorization, and as a result of such conduct, recklessly causes damage" is computer fraud.

46. Per 18 U.S.C. §1030(5)(C), anyone who "intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss" is liable for computer fraud.

47. The Intentional Tortfeasors violated 18 U.S.C. §1030(2)(C), 18 U.S.C. §1030(5)(B), and 18 U.S.C. §1030(5)(C) by intentionally accessing Anon's computer without authorization to send fraudulent wire transfer instructions to the Quinteros.

48. As a result, the Quinteros wired the Converted Funds to the Wells Fargo bank account of the Intentional Tortfeasors, causing damages to the Quinteros of not less than $299,229.20.

## AS AND FOR A THIRD CAUSE OF ACTION
### (NEGLIGENCE)

49. Plaintiffs repeat and reallege the allegations above with the same force and effect as if set forth at length herein.

50. As the attorney for the Quinteros regarding the purchase of property in Florida, and as the custodian of the escrow account maintained for the Quinteros benefit, Anon owed a duty of care to the Quinteros.

51. By failing to reasonably secure his email account and timely inform the plaintiffs (or even recognize) that a breach of his confidential email account had occurred, Anon breached this duty of care.

52. This breach resulted in the Plaintiffs loss of $299,229.20, which the Quinteros still have not been able to recover, resulting in actual loss and damage.

53. As the attorney for the Quinteros in the sale of the NY Home, and as the party

providing the wire transfer instructions to Shiryak, Katsman owed a duty of care to the Quinteros.

54. By failing to reasonably confirm that the revised wiring instructions to a Wells Fargo bank account were non-fraudulent with Anon and for failing to verify that the wire transfer had been completed with Anon, Katsman breached this duty of care.

55. This breach resulted in the Plaintiffs loss of $299,229.20, which the Quinteros still have not been able to recover, resulting in actual loss and damage.

56. Wells Fargo owed the Plaintiffs a duty to not only maintain due diligence procedures and controls regarding suspicious activity, but also to ensure that once a fraudulent or suspicious activity had been detected, to report the activity to federal authorities, and to preserve the Converted Funds pending a reasonable investigation.

57. Wells Fargo was bound by federal regulations concerning their obligation to detect and avoid fraudulent transactions. Specifically, a financial institution must "maintain a due diligence program that includes policies, procedures, and controls that are reasonably designed to detect and report any … suspicious activity conducted through or involving any private banking account that is established, maintained, administered, or managed in the United States by such financial institution." 31 C.F.R. § 1010.620(a). The program must, at a minimum, ascertain the identity of all nominal and beneficial owners of the account, the source of the deposited funds and the purpose for which the funds are to be used. 31 C.F.R. § 1010.620(b)(1)(3). Further, the bank must "[r]eview the activity of the account to ensure that it is consistent with the information obtained about the client's source of funds, and with the stated purpose and expected use of the account …." 31 C.F.R. § 1010.620(b)(4). Any suspicious activity conducted "to, from, or through" the account must be reported to federal authorities. *Id.; see also* 12 C.F.R. § 208.62; 31 C.F.R. § 1020.320. Violation of these statutes constitutes negligence *per se*.

58. Despite noticing the suspicious activity, confirming the wire transfer had been due to a fraudulent scheme, and refusing to initially disburse the funds to the Intentional Tortfeasors, Wells Fargo refused to refund the funds without a letter of indemnity from Chase.

59. Subsequently, despite being fully aware that the wire transfer was due to a fraudulent scheme, Wells Fargo disbursed a portion of the funds to the Intentional Tortfeasors.

60. Anon, Wells Fargo, and Katsman each failed to take timely measures to detect, avoid and respond to the fraudulent wire transfer, causing critical time to be lost in which funds could have been recovered.

61. As a result of the foregoing, Anon, Wells Fargo, and Katsman are liable to the Quinteros for negligence in an amount not less than $299,229.20

## AS AND FOR A FOURTH CAUSE OF ACTION
### (CONVERSION)

62. Plaintiffs repeat and reallege the allegations above with the same force and effect as if set forth at length herein.

63. The Quinteros had the right and interest to Converted Funds.

64. Anon, Wells Fargo, and the Intentional Tortfeasors interfered in the Quintero's exclusive right and interest to the Converted Funds.

65. Anon, Wells Fargo, and the Intentional Tortfeasors' interference in the Quintero's exclusive right and interest to the Converted Funds deprived the Quinteros of the use of the Converted Funds, causing damage to the Quinteros in the amount not less than $299,229.20.

66. As a result of the foregoing, Anon, Wells Fargo, and the Intentional Tortfeasors are liable to the Quinteros for conversion in an amount not less than $299,229.20.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (FRAUD)

67. Plaintiffs repeat and reallege the allegations above with the same force and effect as if set forth at length herein.

68. The Intentional Tortfeasors and/or Anon falsely represented to the Quinteros that the Wells Fargo bank account was the proper account to wire funds to.

69. The Intentional Tortfeasors and/or Anon made this statement to the Quinteros knowing the Wells Fargo bank account was not the proper account to wire the funds to.

70. The Intentional Tortfeasors and/or Anon's intended the Quinteros to rely on their false statement.

71. The Quinteros, acting through their counsel, Katsman, relied upon the statement by the Intentional Tortfeasors and/or Anon to wire the funds to the Wells Fargo bank account.

72. As a result of the Intentional Tortfeasors and/or Anon's misrepresentation, the Quinteros have been damaged in the amount of $299,229.20.

73. As a result of the foregoing, the Intentional Tortfeasors and/or Anon are liable to the Quinteros for fraud in the amount of $299,229.20.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (DECLARATORY JUDGMENT)

74. Plaintiffs repeat and reallege the allegations above with the same force and effect as if set forth at length herein.

75. A justiciable controversy exists as to the extent of Chase, Shiryak, HomeBridge, and Niyazov's role and claims to the Converted Funds, and this Court has the authority to render declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedures.

76. Declaratory relief will the determine rights, duties, and obligations Chase, Shiryak, HomeBridge, and Niyazov had concerning the transfer of the Converted Funds and is,

therefore, appropriate to resolve this controversy.

77.     Plaintiffs do not currently assert any claims for damages against Chase, Shiryak, HomeBridge, and Niyazov, but reserve their right to seek amendment of this Complaint if it is determined during discovery that such defendants may be liable for the Quinteros' loss. However, as the bank from which the above-referenced wire payment was transmitted, the law firm issuing the wire payment from its escrow account, the lending institution whose funds were being transmitted, and the trustee whose trust borrowed such funds as payment for the NY Home, each has a potential claim to the Converted Funds. As the intended recipients of the Converted Funds, the Quinteros request that any and all competing claims to the Converted Funds be extinguished, and that the Quinteros be declared the sole and rightful owners of the Converted Funds.

78.     As a result of the foregoing, the Court should issue declaratory judgment to clarify the rights and obligations of Chase, Shiryak, HomeBridge, and Niyazov, and permit Plaintiffs to reserve the right to assert claims against Chase, Shiryak, HomeBridge, and Niyazov if appropriate following completion of discovery.

## DEMAND FOR A JURY TRIAL

79.     Plaintiffs demand a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## REQUEST FOR RELIEF

**WHEREFORE,** the Plaintiffs respectfully requests that this Court award damages in an amount not less than $299,229.20, plus any and all interest accrued, and on the Sixth Cause of Action for declaratory judgment, to determine the rights and obligations of Chase, Shiryak, HomeBridge, and Niyazov, together with reasonable attorney's fees and costs, and such other and further relief as the Court deems just, proper, and equitable.

Dated: Brooklyn, New York
      July 28, 2017

                                        **MUCHMORE & ASSOCIATES PLLC**
                                        Counsel for Plaintiffs

                                        By:   /s/Andrew Muchmore
                                                Andrew Muchmore (AM 7852)
                                        217 Havemeyer Street, 4th Floor
                                        Brooklyn, New York 11211
                                        amuchmore@muchmorelaw.com
                                        (917) 932-0299